UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-CV-12168-RGS

NANCY COLON

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

MEMORANDUM AND ORDER ON
CROSS-MOTIONS TO REVERSE/AFFIRM
THE DECISION OF THE COMMISSIONER

January 19, 2012

STEARNS, D.J.

Nancy Colon seeks review of a final decision of the Commissioner of the Social Security Administration (SSA) adopting the determination of Administrative Law Judge (ALJ) Matthew Levin that she is not disabled under the terms of the implementing regulations of the Social Security Act (Act). *See* 20 C.F.R. § 404.1520(f).

Colon filed for disability insurance benefits (DIB) and supplemental security income (SSI) on October 29, 2008. The SSA denied her application initially and again on reconsideration. Following a hearing on June 15, 2010, the ALJ issued a decision determining that Colon was able to perform past relevant work and therefore did not qualify as disabled. Although the Decision Review Board selected Colon's case for

review, a timely review was not completed and, on October 20, 2010, the ALJ's decision became the final decision of the Commissioner. Colon seeks review of the Commissioner's decision in the district court pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). The Commissioner, in turn, moves for an affirmance. A hearing on the cross-motions was held on January 17, 2012.

## BACKGROUND

Colon was born in 1960 in Puerto Rico. She was 48-years-old when she initially filed for benefits. Colon was raised by her maternal grandmother and her mother. She completed high school in Puerto Rico. Although Colon was very close to her grandmother, she suffered abuse at the hands of her mother and later, her husband. She is currently divorced and lives independently in Revere, Massachusetts. She has two adult sons who no longer live at home.

Between 1998 and 2008, Colon was employed more or less regularly as a stocker, a bed maker, a food assembler, and a cleaner. On April 28, 2008, she was laid off from her most recent job as a stocker for a department store when it went out of business. Colon has not been employed since.

Colon spends most of her time at home. She watches television, prepares meals for herself, and does household chores. She shops for necessities once a month and uses public transportation. Colon states that she is troubled by persistent back pain.

More significantly, she has a history of depression, which was exacerbated by the death of her maternal grandmother in 2008. As a result of her depression, Colon claims that she cannot concentrate, has difficulty sleeping, and at times has very little energy. She also experiences crying spells and suffers occasional memory lapses.

*Back Pain*

Beginning in June of 2007, Colon complained of lumbosacral pain to her physicians at Massachusetts General Hospital (MGH). She visited MGH numerous times in 2007 and 2008 seeking treatment for her back problems, seeing different doctors each time.[1] Colon was first examined in June of 2007 by Dr. Herman Gomez, who diagnosed her with a back strain. Dr. Harold Wilkinson of the MGH Neurosurgery Department also examined Colon in June of 2007 and noted that she had "considerable tenderness" related to her back pain, but no loss of sensation or impairment of function. Colon told Dr. Wilkinson that she used Motrin to control the pain and, during a later visit to MGH on June 28, 2007, Colon told Dr. Barbara Chase that her back pain had subsided.

In April of 2008, Colon presented to Dr. Amy R. Stagg at MGH. Colon stated that she had been experiencing pain for the past two months and had recently taken a

---

[1] Colon also sought treatment at MGH for asthma, stress incontinence, and an ovarian cyst, none of which is at issue in this appeal.

new job that involved the moving of heavy boxes.[2] On April 3, 2008, Colon was examined by Dr. Vincente Rubin, who found that she was not in acute distress and that her sensory and motor functions, as well as her reflexes, were normal. Colon told Dr. Rubin that she had taken Tylenol for her back pain, which had temporarily subsided and then returned. Dr. Rubin noted that Colon's pain had not radiated and she did not exhibit numbness or paresthesia. He diagnosed her with a probable lumbrosacral strain with questionable arthritis and asked her to return for a follow-up appointment. Colon has not seen a doctor regarding her back pain since April of 2008, although she claims to still experience significant pain.

*Mental Health Treatment*

Colon's mental health symptoms did not surface until sometime after she began presenting at MGH for treatment of problems with her back. In September of 2008, Dr. Gomez, Colon's primary care physician, noted depressive symptoms. He referred her to MGH's Mental Health Department. Because of an apparent lack of vacancies in MGH counseling facilities, Colon did not begin receiving mental health treatment until early 2009.

Throughout the first half of 2009, Colon was examined by a number of mental

---

[2] Colon had also previously told Dr. Wilkinson about a new job in June of 2007. She began working as a stocker in July of 2005.

health professionals. She paid monthly visits to MGH, first with Dr. Gomez and later with Dr. Victor Soria, a psychiatrist. Colon also attended individual and group counseling sessions for approximately three months beginning in January of 2009. On January 5, 2009, Colon was examined by Dr. Jasper Lawson. Two Psychiatric Review Technique evaluations were also completed on January 31, 2009, and June 1, 2009, in conjunction with Colon's initial application for SSA benefits and her application for reconsideration, respectively.

The various examinations showed Colon to be severely clinically depressed, a condition exacerbated by the relatively recent death of her maternal grandmother. Colon reported hearing her grandmother's voice calling to her at night. She also exhibited vegetative signs, including insomnia, anhedonia, tearfulness, low energy, psychomotor retardation, and a sense of hopelessness. Estela Perez, a licensed clinical social worker, noted that Colon's cognitive functioning was striking for negative thoughts. Between January and April of 2009, Colon's Global Assessment of Functioning (GAF) scores ranged from 50 to 57, with more than half of her scores totaling an exact 50.[3] In addition to severe depressive disorder, Colon was found to

---

[3] "A GAF score between 41 and 50 represents '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Amaral v. Comm'r of Soc. Sec.*, 797 F. Supp. 2d. 154, 158 n.1 (D. Mass. 2010), citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental

suffer from Post-Traumatic Stress Disorder (PTSD) caused by past domestic abuse, and from an anxiety disorder.

Colon was prescribed several medications for depression, including paroxetine, clonazepam, mirtazapin, naproxen, and citalopram. Although Colon complied with the psychopharmacological regime prescribed by her doctors, her symptoms were not fully controlled.

## *The ALJ's Decision*

In following the mandated five-step sequential process,[4] the ALJ first found that Colon met the insured status requirements of the Act through June 25, 2010, and that she had not engaged in substantial gainful activity since April 28, 2008, the alleged onset date. The ALJ further found that Colon suffered severe impairments in the form of depression, PTSD, and chronic pain of the lumbar spine (Step 2). Finding at Step 3 that Colon's impairments did not meet or equal an entry in the Listing of Impairments in Appendix 1, the ALJ then proceeded with an assessment of Colon's

---

Disorders (DSM–IV) 34 (4th ed., text rev. 2000). "GAF scores in the 51-60 range indicate '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Warren v. Astrue*, 2011 WL 31292 at *1, n.1 (D. Mass. Jan. 4, 2011), citing DSM-IV 34.

[4] SSA regulations at 20 C.F.R. § 404.1520(a) establish a five-step protocol that the ALJ is to follow in determining whether an individual is disabled within the meaning of the Act.

residual functional capacity (RFC). Based on the RFC finding, the ALJ determined that Colon was able to perform a full range of light work subject to the limitations that the work be unskilled and involve limited social interaction. The ALJ further noted that Colon was able to maintain attention for two-hour periods throughout an eight-hour work day.

Based on Colon's age, education, work experience, and RFC, and the answer of the vocational expert to a hypothetical question incorporating her limitations, the ALJ determined that Colon was able to perform past relevant work as a food assembler and bed maker, jobs that are available in the national economy. As a result, the ALJ concluded that Colon was not disabled between the alleged onset date, April 28, 2008, and the date of his decision, June 25, 2010.

## DISCUSSION

Judicial review is limited to determining whether the findings of the Commissioner are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The findings of the Commissioner will be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). "[The] question [is] not which side [the court] believe[s] is right, but

whether [the ALJ] had substantial evidentiary grounds for a reasonable decision . . . ." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998). However, the Commissioner's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

The Act defines "disability" as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further provides that

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

Colon first contends that the ALJ failed to properly evaluate her subjective complaints of pain under *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19 (1st

8

Cir. 1986). *Avery* requires a two-step evaluation of credibility: first, the ALJ must find that there exists a "clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." *Id.* at 21; 20 C.F.R. § 404.1529(b). If such an impairment is found, the ALJ must then determine the severity of the alleged symptoms, including pain, and the extent to which the symptoms functionally impair the claimant. *Avery*, 797 F.2d at 22-23; 20 C.F.R. § 404.1529(c).

If a claimant's allegations of pain are not wholly substantiated by objective medical evidence, an ALJ should consider the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; and (5) any other factors relating to claimant's functional limitations and restrictions attributable to pain. *Avery*, 797 F.2d at 22; 20 C.F.R. §§ 404.1529 and 416.929(c)(3)(i-vii).

The ALJ's opinion hews exactly to the *Avery* two-step process. At the first step, the ALJ found that Colon suffers from medically determinable impairments that could reasonably give rise to her complaints of pain. At the second step, however, the ALJ found Colon's subjective complaints to be only marginally credible and only to the extent that they were not inconsistent with the "objective medical evidence,

as well as the findings of the State agency medical consultant, and the ultimate findings of the Vocational Expert." R. at 12.

With respect to his credibility findings, the ALJ first focused on Colon's description of her daily activities, including personal shopping, doing housework, and preparing meals. He noted that since the alleged onset date, she has cared for her grandson and managed personal finances. The ALJ also acknowledged Colon's physical and, more significantly, her mental complaints, noting that she "indicated that she has trouble with her memory and cannot concentrate . . . [and] experienced the thought of suicide once, a while ago." R. at 12. He recounted Colon's professed symptoms of anhedonia, crying spells, feelings of hopelessness, and psychomotor agitation. He listed Colon's several prescription medications and noted that her symptoms have persisted despite medication and therapy.

The ALJ then went on to specify the evidence that he had relied upon in deciding not to wholly credit Colon's testimony. *See Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (the ALJ "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]"). With respect to Colon's back symptoms, the ALJ relied on the reports from Colon's doctors, none of whom found her pain to be as severe as she described it or noted any major functional limitation on her part. The ALJ also gave weight to

10

the fact that Colon had not sought a State Agency medical assessment regarding physical impairment in connection with her benefits applications.

With respect to Colon's mental impairment, the ALJ relied on a June 1, 2009 medical consultant assessment performed by Dr. Michael Maliszewski, the State examiner. After reviewing Colon's medical records, Dr. Maliszewski opined that Colon was not markedly limited by her mental health symptoms. His assessment indicated that Colon had moderate difficulty maintaining concentration, persistence and social functioning, but that she possessed sufficiently intact attention to recall and complete simple tasks. In addition to Dr. Maliszewski's report, the ALJ also found probative the fact that Colon's GAF scores ranged above 50, evidence suggesting that Colon suffered "only moderate symptoms."[5] R. at 13.

Despite Colon's objections, an ALJ's credibility determination is conclusive so long as he has considered the claimant's subjective complaints and explained his reasons for rejecting them. *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 ("[T]he credibility determination of the ALJ . . . is entitled to deference, especially when supported by specific findings."). The specific findings set out in

---

[5] The ALJ's statement that Colon had "consistent GAF scores in the 50s" is not entirely accurate since Colon had several scores that equaled 50. The 1-point differential is not, however, clinically significant, especially as Colon lacks consistent symptoms of severe impairment (e.g., suicide ideation and the inability to keep a job).

11

the ALJ's decision provide ample support for his credibility determination. In addition, evidence in the record, although not expressly cited by the ALJ, further corroborates his finding. For example, Ms. Perez noted that Colon seemed motivated to improve herself, in fact showed signs of improvement, and interacted well with others in group counseling. Reports from Colon's doctors also found her consistently coherent, cooperative, and oriented despite her depressive symptoms. Even more telling, Colon told both Dr. Soria and Ms. Perez that she was actively looking for a job in 2008 and 2009. She has also been collecting unemployment benefits for which she is required to certify that she is able to work. *See Wimberly v. Labor & Indus. Relations Comm'n of Missouri*, 479 U.S. 511, 525 (1987); *see also* Mass. Gen. Laws ch. 151A, § 24(b).

Colon next claims that the ALJ erred because his RFC determination was not supported by substantial evidence. Specifically, Colon appears to contend that the ALJ should have adopted as true the hypothetical, posed by her counsel at the hearing, that Colon could only concentrate for one-hour increments throughout an eight-hour workday. Colon, however, has offered no convincing proof of such a limitation. *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). Nor was the ALJ bound to accept the factual premise of counsel's hypothetical where it was contradicted by the opinion of a medical professional.

Colon finally argues that the ALJ's RFC finding is contrary to the diagnosis of Dr. Soria, who found Colon severely functionally impaired by her depression. The ALJ was not, however, required to accept Dr. Soria's analysis when it conflicted with other medical evidence in the record supporting a finding of lesser impairment. *Rodriguez*, 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence . . . is for [the ALJ], not for the doctors or for the courts.").

## ORDER

For the foregoing reasons, Colon's motion to reverse the decision of the Commissioner is <u>DENIED</u>. The Commissioner's cross-motion for an order of affirmance is <u>ALLOWED</u>. The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE